[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Plaintiff Michael Homer is petitioning the Court for injunctive relief to order the restoration of his status as a second-ranked eligible firefighter on respondent Town's hiring list.
As of May 31, 2002, Mr. Homer, as the result of a competitive selection process, held the number 2 position on the eligibility list for new hires for the Town of Middletown Fire Department. He had scored 78.8 on the written examination, taken in town hall. Mr. Homer testified that the town purchases the examination from "out west" and its contents are very secretive. Homer also passed a very strenuous endurance/physical agility test, the "Combat Challenge," which was conducted by the Beacon Mutual Insurance Company.
On May 14, 2002, Mr. Homer presented himself to a board of interviewers at town hall. The town administrator, Michael Embury, had been notified by Middletown's Fire Chief, David Carlisle, that the board would be comprised of Chief Jack Faria (of the Little Compton Fire Department), Deputy Chief William Bigelow (Portsmouth Fire Department), and Captain Robert Faria (Middletown Fire Department). When, on May 31, 2002, Mr. Homer received a letter stating that his score of 100.13[1]
placed him second on the eligibility list, he was "ecstatic." In reasonable reliance upon securing a position, he and his wife decided to expand both their home and their family.
When further news regarding hiring was not forthcoming, Mr. Homer approached the town administrator, Mr. Embury, to inquire about the position. Mr. Embury patiently tried to assuage Mr. Homer's concerns. Several weeks later, Mr. Homer was notified by telephone that he would have to be re-interviewed by a board of civilians. Despite the fact that he received less than 24 hours notice of this interview, Mr. Homer presented himself to the "personnel board," including Messrs. Sylvia and Nash. Mr. Homer was never informed that the interview could impact his eventual score and eligibility rating. Needless to say, he was not apprised as to what considerations or methodology would be employed to "rate" the candidates. After the hastily convened re-interview process was concluded, Mr. Homer's standing astoundingly plummeted to 14th position, with applicant Keith Notarianni instead in the second position. Although Mr. Sylvia has been a "very close personal friend" of Mr. Notarianni's father for 20 years, he failed to disclose this to the board. However, Mr. Sylvia was designated on Mr. Notarianni's application as a character reference. (Plaintiff's Exhibit 20).
Respondent Town's personnel policy mandates that government employment be based on merit and fitness and, also, be free ofpersonal and political considerations. Town Code, § 37.015(A). The Charter also requires personnel actions to be based upon a comprehensive evaluation of an individual's qualifications to perform duties and accept responsibilities. Id. § 37.015(D). The examination of firefighter applicants must be competitive and must fairly test a candidate's fitness to efficiently discharge the duties of the position. Id., § 37.031(A). Every component of an applicant's test must employ an objective standard or measure. If the standard or measure is wholly dependent upon the subjectivity of the examiner, the result is tantamount to the "uncontrolled opinion of the examiners and cannot be termed competitive." Fink v. Finegan, 1 N.E.2d 462,464 (N.Y. 1936). In Fink, an applicant for the position of municipal surgeon failed the oral examination because, according to the interviewers, he "lacked force and executive ability, and was altogether too mild." Nowhere in the record did a test or measure of "executive ability" appear. The Court of Appeals ruled that an examination "cannot be classed as competitive unless it conforms to measures or standards which are sufficiently objective to be capable of being challenged and reviewed, when necessary, by other examiners of equal ability and experience."Id. at 465.
Mr. Homer had no notice as to what impact the results of the interview could have on his eventual score. He was not informed as to how his responses would be measured or rated. Despite the fact that the interviewer's form requires the specification of questions with a corresponding score and a "total score" allowed, only Chief McCarthy conformed himself to this process. He categorized five areas of questioning as "preparation, teamwork, paramilitary, community, knowledge of Middletown," assigned an individual score to each applicant's response, and averaged the aggregate sum. For some of the candidates, however, the Chief added a sixth "other" category, gave it a score, and divided by six. For some applicants, the "other" was specified, for others it was not. Applicants five and seven, for example, received respective scores of 75 and 88 in the "other" category, without indication of what the "other" factors were. Applicant six received a 95 in "other" for appearing "capable, confident, and motivated." Mr. Homer scored 80 in "other," because the Chief concluded that he "couldn't express or sell himself, [and was a] poor communicator." Keith Notarianni received a 97 in "other," the Court believes for being "articulate, knowledgeable, well-trained, quality [sic], respectful, well-researched."
The records of the other board interviewers are utterly devoid of scores per question and/or total score allowed. It is impossible to discern on what basis these board members ranked the applicants because there are no objective findings contained in their reports. The only candidate of the 25 ranked as "outstanding" is Keith Notarianni, by Robert Sylvia — one of his character references.
As aforementioned, in order for any test to be competitive, including an oral examination, the test must employ a standard of measure sufficiently objective to be capable of being challenged and reviewed by other examiners of equal ability and experience. Del Vecchio v. Civil Service Comm. Of the City ofBridgeport, 423 A.2d 139, 141 (Ct. 1979). The Del Vecchio
court noted that the fact that an examination is oral or that it is not wholly objective does not prevent it from being classified as competitive. Id. (citing Almassy v. Los Angeles CountyCivil Science Comm., 210 P.2d 503, 510-12 (Cal. 1949),
 Apart from the records generated by Chief McCarthy, there is no evidence of the methodology employed to rate the applicants responses. Indeed, no scores (with the exception of the Chief) were given to the individual answers or to the applicants themselves. The credible evidence unequivocally demonstrates that the eligibility list in controversy was the product of an infirm process. Exempting the conduct of Chief McCarthy, there is no evidence that the "results" of the interviews and the ranking of the applicants rested upon little more than the board members' personal, subjective notions. This situation is further compounded by the fact that the town failed to fairly inform the applicants of the very substantial role the interviews were to play in the selection process. Thus, the July 2, 2003 eligibility list violates the merit classification system mandated by town ordinances. The May 31, 2002 list was the result of a valid procedure, conforming to the requirements of competitive examination and merit selection. The town cannot thereafter, alter the rules or choose which ones to apply or how to apply them. Furthermore, the selective application of different rules retrospectively is violative of petitioner Homer's due process rights.
The ample and reliable evidence produced at hearing indisputably proves that petitioner is entitled to the injunctive relief he seeks. Thus, his motion for a preliminary injunction is granted. Counsel shall prepare an order for entry.
[1] The respondent claims that Homer did not establish his entitlement to residency points. The Court rejects this claim as there is abundant, credible, and incontrovertible evidence in the record that petitioner Homer is entitled to be awarded residency points.